**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**CLIFTON ROLLINS, AVON RAWLS, AND
KELVIN RAWLS**                                                                   **PLAINTIFFS**

**V.**                                                    **CIVIL ACTION NO. 2:14cv61-KS-MTP**

**HATTIESBURG POLICE DEPARTMENT, AND
OFFICER ADAM S. MCGINTY, INDIVIDUALLY
AND IN THIS OFFICIAL CAPACITY, AND
JOHN DOES 1, 2, 3, 4, AND 5**                                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment [44] of the

Defendants Hattiesburg Police Department and Officer Adam S. McGinty.  Having

considered the submissions of the parties, the record, and the applicable law, the Court

finds that the motion should be granted in part and denied in part.

**I.  BACKGROUND**

Plaintiffs Clifton Rollins, Avon Rawls, and Kelvin Rawls allege federal and state

law claims relating to their arrests on January 9, 2012, in Hattiesburg, Mississippi.

Plaintiffs name the Hattiesburg Police Department (the "Department") and Officer Adam

S. McGinty ("Officer McGinty"), in his individual and official capacities, as Defendants.

Officer McGinty was a member of the Department at all times relevant to the Complaint.

The following particulars surrounding the Plaintiffs' arrests are derived from

Officer McGinty's trial testimony in the underlying criminal proceedings and the Police

Department Investigative Report ("Police Report") prepared by Officer McGinty.  (*See*

Police Report [44-1]; Trial Tr. [53-2].)[1]  On January 9, 2012, Officer McGinty was on

---

[1] The Plaintiffs and Defendants cite to the Police Report in their briefing on summary judgment.

patrol with Lieutenant Terrence Bullock, his supervisor, when an older individual flagged them down and advised of a situation at the Regions Bank located on Broadway Drive. The individual stated that he had just left the Bank and there were several young males occupying two sports utility vehicles ("SUVs") in the parking lot.  The individual was concerned for his safety and the safety of the Bank because the younger males stayed in the parking lot and did not conduct any banking business during the approximate ten to fifteen minutes he was at the premises.  Officer McGinty relayed this information to other members of the Department and proceeded to the Bank.

Upon arriving at the scene, Officer McGinty observed two SUVs in the parking lot. There were several individuals inside each vehicle.  One of the SUVs had its rear hatch open; Clifton Rollins was standing next to this SUV.  Officer McGinty exited his vehicle and approached Clifton Rollins, while Lieutenant Bullock walked toward the other SUV. At that point in time, Officer McGinty did not observe anyone committing a crime.  Officer McGinty, nonetheless, began questioning Rollins to investigate the matter in light of the aforementioned citizen complaint.  Officer McGinty initially asked Rollins to step to the side of the vehicle.  Rollins hesitated to comply and asked what he had done wrong. Officer McGinty told Rollins that he did not think they were doing anything wrong, but he wanted to get some information.  Officer McGinty said this to Rollins "not to aggravate him[;]" he really "didn't know what was going on."  (Trial Tr. [53-2] 30:26-31:11.)  Officer McGinty again asked Rollins to step to the side of the vehicle and Rollins eventually complied.  Officer McGinty subsequently asked Rollins to turn around and place his hands on the vehicle in order to conduct a pat down search.  Rollins then became irate and noncompliant.  Officer McGinty asked Rollins to turn around several more times.

After the second or third time, Officer McGinty placed his hand on Rollins' shoulder and Rollins complied.  Rollins kept talking loudly and attempted to turn toward Officer McGinty as he conducted a pat down search.  Officer McGinty then placed Rollins "into handcuffs because of his actions."  (Trial Tr. [53-2] 16:12-14.)

Several additional police officers arrived on the scene during Officer McGinty's interactions with Rollins.  After Officer McGinty handcuffed Rollins, he joined the other officers as they questioned the remaining individuals who had occupied the two SUVs. At some point during the questioning, Avon Rawls and Kelvin Rawls began yelling loudly, cursing, and/or telling the other members of the group not to say anything. Neither Avon Rawls nor Kelvin Rawls heeded Officer McGinty's requests for them to be quiet and listen.  Further, Kelvin Rawls provided misinformation regarding whether he was a passenger or driver of one of the vehicles.  Kelvin Rawls and Avon Rawls were thus handcuffed and taken into custody.  The officers searched the two SUVs and no contraband was found inside either vehicle.  All of the individuals, except Clifton Rollins, Avon Rawls, and Kelvin Rawls (the "Plaintiffs"), were allowed to leave the Bank parking lot.  The Plaintiffs were transported to the Forrest County Jail and charged with disorderly conduct and interfering with a police investigation.

Plaintiffs have submitted an affidavit executed by Jason Rawls regarding the subject incident.  (*See* J. Rawls Aff. [53-3].)  Jason Rawls avers that he is related to Clifton Rollins and Kelvin Rawls, and that he was the driver of one of the SUVs at the Bank.  Jason Rawls states as follows regarding Officer McGinty's interactions with Clifton Rollins:

Officer McGinty came up to my brother, Clifton Rollins, and told him to "put

> his hands up." My brother, Clifton Rollins', response was, "what have I done wrong." After my brother, Clifton Rollins, asked the question, Officer McGinty told Clifton "get up against the truck," and my brother complied while asking again, "what have I done wrong." Officer McGinty then proceeded to handcuff my brother, Clifton Rollins, while he and Lt. Bullock told all the occupants of the two SUVs to exit the vehicles.

(J. Rawls Aff. [53-3] at pp. 1-2.)  Jason Rawls further avers that Lieutenant Bullock stated, "[W]hen you guys come out here with this stuff like the club, our taxes go down, and when our taxes go down, my pay goes down, and you guys are not in Columbia, you not gonna come out here and take over anything."  (J. Rawls Aff. [53-3] at p. 2.) Morever, Jason Rawls was a co-owner of a night club in Hattiesburg at the time of the incident, and Lieutenant Bullock and Officer McGinty had previously accused him and his "brothers of being involved with illegal drugs."  (J. Rawls Aff. [53-3] at p. 2.)

In September of 2012, each of the Plaintiffs was found guilty of disorderly conduct and interfering with a police officer in the Municipal Court of the City of Hattiesburg ("Municipal Court").  (See Doc. No. [53-7].)  Plaintiffs then appealed their convictions to the County Court of Forrest County ("County Court").  A trial de novo was held in the County Court on October 7, 2013.[2]  All charges against the Plaintiffs were dismissed with prejudice after the prosecution presented its case in chief and the Plaintiffs moved for a directed verdict.  (See Order of Dismissal [53-8].)

On May 2, 2014, Plaintiffs filed their Complaint [1] against the Department and Officer McGinty in this Court.  Plaintiffs allege violations of their rights under the Fourth and Fourteenth Amendments of the United States Constitution pursuant to Title 42

---

[2] In Mississippi, appeals from municipal courts to county courts are conducted via trials de novo.  See URCCC 12.02(C).

U.S.C. § 1983.  Plaintiffs also assert the following state law claims in connection with their arrests:  assault, battery, kidnaping, false imprisonment, malicious prosecution, intentional infliction of emotional distress, outrageous conduct, libel, and slander.  Defendants presently seek summary judgment on all of the Plaintiffs' claims.

## II.  DISCUSSION

### A.    Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Initially, the movant has "the burden of demonstrating the absence of a genuine issue of material fact."  *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  If the movant meets this burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial.  *Id.*  "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir.2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding

whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 322).

      **B.**    **Analysis**

          **1.**    **Federal Claims**

Title 42 U.S.C. § 1983 does not provide a general remedy for state law torts or allow access to federal courts for all individuals suffering injuries at the hands of state actors.  *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981).  The statute "affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.* (quoting 42 U.S.C. § 1983).  To state a cognizable § 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee v. Covington County Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008)).  Official conduct by a governmental actor in connection with a purported

-6-

constitutional violation, i.e., the "color of law" requirement, is not in dispute in this case. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464 (5th Cir. 2010).

Section 1983 claims may be brought against government employees "in their individual or official capacity, or against a governmental entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (internal citation omitted). A governmental entity cannot be held liable on a respondeat superior theory of recovery under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Municipal liability via § 1983 requires that an official policy or custom be the moving force behind the constitutional violation. *See id.* at 694-95.

Individual defendants, but not governmental entities, may rely on the defense of qualified immunity. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 436 (5th Cir. 2008) (citing *Owen v. City of Independence*, 445 U.S. 622, 657, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980)). "Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. City of*

*Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).  In order to overcome the defense of qualified immunity, the plaintiff must show:  "(1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct."  *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011)).

### a.    Municipal Liability

Three elements must be satisfied in order for a municipality to be held liable for a violation of an individual's federal rights:  "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."  *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).  Plaintiffs "concede that the City of Hattiesburg has no liability in this cause as" they cannot "prove that the City of Hattiesburg has a policy or custom which was a moving force behind the constitutional violations."  (Pls.' Mem. in Resp. to Mot. for SJ [54] at p. 4.)  Further, Plaintiffs fail to rebut the Department's assertion that it is not an entity capable of being sued.  A department of a local governmental entity "must enjoy a separate legal existence" in order for it to be properly named as a defendant.  *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir.1991) (citations and internal quotation marks omitted).  "The capacity of an entity to sue or be sued 'shall be determined by the law of the state in which the district court is held.'"  *Id.* (quoting Fed. R. Civ. P. 17(b)).  "In Mississippi, police and Sheriff's departments are not subject to suit because they do not enjoy a separate legal

-8-

existence apart from their respective cities or counties." *Fuhgetaboutit, LLC v. Columbus Police Dep't*, No. 1:10cv207, 2011 WL 4529665, at *2 (N.D. Miss. Sept. 28, 2011) (citation omitted); *see also Stovall v. City of Hattiesburg*, No. 2:10cv84, 2010 WL 1980313, at *1-2 (S.D. Miss. May 17, 2010) (dismissing the Hattiesburg Police Department since the City of Hattiesburg was the proper party).

The Department is due to be dismissed from this lawsuit since it does not enjoy a separate legal existence apart from the City of Hattiesburg.  In addition, summary judgment in favor of Officer McGinty, in his official capacity, is appropriate due to the Plaintiffs' failure to identify an official policy or custom giving rise to the alleged constitutional violations.  *See Graham*, 473 U.S. at 166 (providing that suits against government employees in their official capacities are essentially against the entities they represent); *Dinnella v. Jones*, No. 1:13cv33, 2014 WL 1324287, at *3 (S.D. Miss. Mar. 31, 2014) (dismissing official-capacity claims against a county official where the plaintiff failed to allege that the moving force behind the constitutional violation was a policy or custom).

### b.   Individual Liability

Officer McGinty argues that the Plaintiffs' § 1983 claims against him in his individual capacity are barred by the defense of qualified immunity.  Plaintiffs contend that Officer McGinty's actions were objectively unreasonable and that they have sufficiently alleged violations of their rights guaranteed by the Fourth and Fourteenth Amendments.  The Court finds that the Plaintiffs' individual-capacity claims against Officer McGinty should also be dismissed.

The Fourth Amendment, made applicable to the States via the Fourteenth

-9-

Amendment, protects "against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  This protection may be violated by an officer's use of excessive force during the course of an arrest, or an unlawful arrest not supported by probable cause.  *See Keim v. City of El Paso*, 162 F.3d 1159, 1998 WL 792699, at *4 n.4 (5th Cir. Nov. 2, 1998) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Duckett v. City of Cedar Park*, 950 F.2d 272, 278-79 (5th Cir. 1992)).  Plaintiffs' Complaint [1] arguably alleges constitutional claims of excessive force and unlawful arrest.  However, Plaintiffs have failed to evidence genuine issues of material fact precluding a grant of summary judgment in favor of Officer McGinty on those claims.

### i)   Excessive Force

In order to establish a Fourth Amendment violation based on excessive force, Plaintiffs "must show:  (1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable."  *Hill v. Caroll County, Miss.*, 587 F.3d 230, 234 (5th Cir. 2009) (citing *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999)).  Plaintiffs' briefing in opposition to summary judgment fails to carry forward any allegation from the pleadings that Officer McGinty used excessive force during the course of their arrests.  It thus appears that the Plaintiffs have abandoned this particular Fourth Amendment claim.[3]

---

[3] *See Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008) (finding that plaintiffs abandoned their claim for tortious breach of contract when their summary judgment response was limited to their bad faith claim); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that the plaintiff's failure to pursue a claim beyond her complaint resulted in abandonment); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.") (citation omitted).

Even overlooking the issue of abandonment, Plaintiffs' excessive force claims falter on the initial "injury" requirement. The requisite "injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). Plaintiffs fail to present evidence of any injury, de minimis or otherwise, sustained by them as a result of their seizures by Officer McGinty.[4] Moreover, it is well established "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Connor*, 490 U.S. at 396 (citation omitted); *see also Williams*, 180 F.3d at 703 ("In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation.") (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). The summary judgment record in this case does not evidence any facts indicating that Officer McGinty used force beyond that required to detain, handcuff, and place the Plaintiffs into police custody. *Cf. Glenn*, 242 F.3d at 314 (holding that "handcuffing too tightly, without more, does not amount to excessive force"); *Burton v. City of Senatobia*, No. 2:06cv216, 2008 WL 619301, at *8-9 (N.D. Miss. Mar. 3, 2008) (finding no violation of the Fourth Amendment where the

---

[4] Plaintiffs claim that Kevin Rawls' SUV sustained $1,976.00 in damage during a canine officer's search for drugs. However, this fact is immaterial to the issue of whether the Plaintiffs suffered injuries resulting from Officer McGinty's use of force. *See Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) (the plaintiff must show an injury resulting "directly and only from the use of force that was excessive to the need") (citation omitted).

plaintiff alleged he was manhandled by the defendants).  As a result, Plaintiffs cannot establish a constitutional violation based on excessive force.

### ii)     Unlawful Arrest

Plaintiffs must show that they were arrested without probable cause in order to prevail on their claims for unlawful arrest under § 1983 claim.  *See Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)).  An officer may conduct a warrantless arrest for even a minor criminal offense if it is supported by probable cause.  *See Deville*, 567 F.3d at 165 (citation omitted).  "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'"  *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004) (quoting *Glenn*, 242 F.3d at 313).  When an individual is arrested for multiple crimes, the existence of probable cause as to a single criminal charge will negate a constitutional violation.  *See Deville*, 567 F.3d at 164 (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)).  A law enforcement officer is entitled to "qualified immunity if he 'reasonably but mistakenly conclude[s] that probable cause is present.'"  *Massey v. Wharton*, 477 Fed. Appx. 256, 260 (5th Cir. 2012) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)).  "[T]here must not even arguably be probable cause for the . . . arrest for immunity to be lost."  *Haggerty*, 391 F.3d at 656 (citation omitted).

Each of the Plaintiffs was charged with disorderly conduct.  (*See* Police Report [44-1] at p. 4; Trial Tr. [53-2] 19:5-21, 33:13-15, 39:27-29.)  Under section 97-35-7 of the Mississippi Code, disorderly conduct constitutes a "fail[ure] or refus[al] to promptly

comply with or obey a request, command, or order of a law enforcement officer . . . ."
Miss. Code Ann. 97-35-7(1).  The summary judgment record contains facts that could
lead a reasonable officer to conclude the Plaintiffs had committed or were in the process
of committing this crime when they were arrested.  Officer McGinty has testified that
Avon Rawls and Kelvin Rawls failed to comply with requests to calm down and be quiet
during the course of the police investigation regarding a citizen complaint.  (*See* Trial Tr.
[53-2] 18:22-19:21, 41:10-29.)  Officer McGinty has also provided that Clifton Rollins
initially failed to comply with requests for him to move to the side of a vehicle and to turn
around and place his hands on the vehicle.  (*See* Trial Tr. [53-2] 13:8-14:12, 16:4-14,
33:3-34:2.)  Furthermore, Rollins was purportedly "turning, . . . continuing to try to turn
his body towards" Officer McGinty while he tried "to conduct the field pat down . . . ."
(Trial Tr. [53-2] 34:8-12.)  It is certainly possible that a different police officer faced with
this same set of circumstances may have chosen not to arrest the Plaintiffs for
disorderly conduct.  Nonetheless, the Fifth Circuit has held that "if officers of reasonable
competence *could* disagree on whether or not there was probable cause to arrest a
defendant, immunity should be recognized."  *Morris v. Dillard Dep't Stores, Inc.*, 277
F.3d 743, 754 (5th Cir. 2001) (quoting *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995)).


Plaintiffs argue that Officer McGinty's actions were not objectively reasonable
because Kelvin Rawls was arrested for merely "raising his voice and asking questions,"
and Avon Rawls was placed under arrest only after he "took out his cell phone and
began videoing the situation."  (Pls.' Mem. in Resp. to Mot. for SJ [54] at pp. 2, 5.)
However, Plaintiffs fail to present any evidence supporting these assertions.  The

-13-

affidavit testimony of Jason Rawls describes certain of Officer McGinty's interactions with Clifton Rollins, but does not detail Officer McGinty's arrests of or interactions with Avon Rawls or Kelvin Rawls.  (*See* Rawls Aff. [53-3].)  It is well established that arguments of counsel and unsworn allegations in the pleadings fail to create genuine issues for trial.  *See, e.g.*, *Nettles v. Travelers Prop. Cas. Ins. Co.*, 375 F. Supp. 2d 489, 492 (S.D. Miss. 2005); *Roberts v. Walthall County Gen. Hosp.*, 96 F. Supp. 2d 559, 561 (S.D. Miss. 2000), *aff'd*, 240 F.3d 1075 (5th Cir. 2000).  Thus, Officer McGinty's statements concerning the arrests of Avon Rawls and Kelvin Rawls are essentially uncontested.  Viewing the totality of the facts and circumstances presented by the summary judgment evidence in Plaintiffs' favor, the Court finds that no reasonable jury would conclude that Officer McGinty's arrests of Avon Rawls and Kelvin Rawls were "not even arguably" supported by "probable cause."  *Haggerty*, 391 F.3d at 656 (citation omitted).  Both of these Plaintiffs have thus failed to defeat Officer McGinty's entitlement to qualified immunity on their claims for false arrest.  *See id.*

The Court also determines that the independent intermediary doctrine negates all of the Plaintiffs' false arrest claims even assuming, *arguendo*, that the affidavit of Jason Rawls gives rise to issues of material fact regarding Clifton Rollins' arrest.  The Fifth Circuit has held that "'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation' for the Fourth Amendment violation."  *Jennings v. Patton*, 644 F.3d 297, 300-01 (5th Cir. 2011) (quoting *Cuadra*, 626 F.3d at 813).  The chain of causation remains broken notwithstanding a subsequent dismissal of criminal charges.  *See Shields v. Twiss*, 389 F.3d 142, 144-45, 150 (5th Cir. 2004) (applying the independent

-14-

intermediary doctrine where the plaintiff was indicated by the grand jury and the prosecuting authority later dismissed the charges); *Allen v. Jackson County, Miss.*, No. 1:12cv57, 2014 WL 940270, at *1, 10-11 (S.D. Miss. Mar. 11, 2014) (dismissing Fourth Amendment claims pursuant to the doctrine given the existence of judicial determinations favoring the plaintiff's arrest even though several criminal counts were ultimately dismissed on directed verdict).  However, the chain of causation leading to a constitutional violation remains intact if it can be shown that the defendant withheld relevant information from the independent intermediary or that the intermediary's deliberations were in some other "way tainted by the actions of the defendant."  *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988).

All of the Plaintiffs were found guilty of disorderly conduct by the Judge for the Municipal Court ("Municipal Judge") in September of 2012.  (*See* Doc. No. [53-7].)  This ruling by an independent intermediary supports Officer McGinty's arrests of the Plaintiffs for this crime and "breaks the chain of causation for false arrest . . . ."  *Craig v. Dallas Area Rapid Transit Auth.*, 504 Fed. Appx. 328, 332-33 (5th Cir. 2012) (affirming the dismissal of the plaintiff's Fourth Amendment claim) (citation omitted).  The subsequent dismissal of all criminal charges against the Plaintiffs in the County Court in November of 2013 fails to reestablish a causal link between the subject arrests and a constitutional violation.  *See Shields*, 389 F.3d at 144-45, 150; *Allen,* 2014 WL 940270, at *1, 10-11. In addition, Plaintiffs have not "affirmatively shown" what evidence the Municipal Judge relied on in finding them guilty, that the evidence "was *improperly* presented," or that the "evidence could have misled" the Municipal Judge "in making an objective judgment." *Craig*, 504 Fed. Appx. at 332-33.  Plaintiffs have also failed to show that they were

somehow prevented from presenting any countervailing evidence to the Municipal Judge prior to her ruling. *Cf. Allen*, 2014 WL 940270, at *11 (providing that there was no indication the judicial officer was prevented "from being fully advised of the circumstances" regarding the subject arrests). Consequently, the deliberations of the independent intermediary remain untainted and Plaintiffs' false arrest claims are subject to dismissal. *See Hand*, 838 F.2d at 1428.

### 2. State Law Claims

#### a. Statutes of Limitations

Officer McGinty and the Department argue that the Plaintiffs' state law claims are time-barred. The Court agrees in part. Excepting the Plaintiffs' cause of action for malicious prosecution, all of their claims are untimely under the Mississippi Tort Claims Act's ("MTCA") one-year period of limitation. *See* Miss. Code Ann. § 11-46-11(3). The claims are also time-barred under the one-year period prescribed by section 15-1-35 of the Mississippi Code, in the event the Defendants' acts or omissions are considered to fall outside of the protections of the MTCA.

Section 15-1-35 specifically encompasses Plaintiffs' allegations of assault, battery, false imprisonment, libel, and slander. Plaintiffs fail to cite, and the Court has not identified any Mississippi authority recognizing a civil action for kidnaping. The Court thus construes this allegation as duplicative, or the substantive equivalent, of Plaintiffs' false imprisonment claim. The Mississippi Supreme Court has held that the tort of intentional infliction of emotional distress is fairly embodied within the causes of action listed under section 15-1-35. *See Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 423 (¶ 26) (Miss. 2010). Also, there is no legally cognizable difference between a

claim of "outrageous conduct"[5] and Plaintiffs' cause of action for intentional infliction of emotional distress.  *See, e.g.*, *Maas v. Moran*, No. 1:11cv287, 2013 WL 4456154, at *9 (S.D. Miss. Aug. 16, 2013); *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 179 (¶ 64) (Miss. 1999).  The Court finds that the aforementioned claims accrued on January 9, 2012, the date the Plaintiffs were arrested and bonded out of jail.[6]  Plaintiffs' Complaint [1], filed more than two (2) years later on May 2, 2014, is untimely under section 15-1-35.

The MTCA affords "the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit."  *Southern v. Miss. State Hosp.*, 853 So. 2d 1212, 1215 (¶ 10) (Miss. 2003) (citations omitted).  Under the MTCA, suits against governmental entities must "be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based . . . ."  Miss. Code Ann. § 11-46-11(3).  However, filing a notice of claim with a governmental entity allows for the statute of limitations to be tolled for a maximum period of 185 days.  *See id.*  Even giving the Plaintiffs the full benefit of the MTCA's tolling provisions, this action was filed approximately nine (9) months after the statute of limitations expired.  As a result, there is no issue for trial with respect to Plaintiffs' state law claims for assault, battery, false imprisonment, libel, slander, and intentional infliction of emotional distress.

---

[5] (Compl. [1] at p. 7.)

[6] January 9, 2012, is also the date listed on the Police Report [44-1] completed by Officer McGinty.

Torts requiring proof of malice, such as Plaintiffs' malicious prosecution claim, fall outside the scope of the MTCA.  *See Hagan v. Jackson County, Miss.*, No. 1:13cv268, 2014 WL 4914801, at *12 (S.D. Miss. Sept. 30, 2014) (citing *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64 (Miss. Ct. App. 2011)).  The Mississippi Supreme Court has held that a claim for malicious prosecution is subject to the statute of limitations prescribed by section 15-1-35.  *See City of Mound Bayou v. Johnson*, 562 So. 2d 1212, 1219 (Miss. 2012).  Yet, the one-year period does not begin to run until the termination of the underlying proceeding in the plaintiff's favor.  *See Joiner Ins. Agency, Inc. v. Principal Cas. Ins. Co.*, 684 So. 2d 1242, 1244 (Miss. 1996) (citation omitted).  This action was filed within one (1) year of the termination of the criminal proceedings against the Plaintiffs in the County Court.  Therefore, the Plaintiffs' cause of action for malicious prosecution is not time-barred.

### b.    Malicious Prosecution

Plaintiffs must prove each of the following elements by a preponderance of the evidence in order to recover on their malicious prosecution claims:

> (1) [T]he institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceeding in the plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of the injury or damage as a result of the prosecution.

*Rainer v. Wal-Mart Assocs., Inc.*, 119 So. 3d 398, 403 (¶ 18) (Miss. Ct. App. 2013) (quoting *Perkins v. Wal-Mart Stores, Inc.*, 46 So. 3d 839, 844 (¶ 10) (Miss. Ct. App. 2010)).  A government employer cannot be held liable under the MTCA if its employee is considered to have acted with malice.  *See Dozier v. City of Purvis*, No. 2:11cv46, 2012

WL 4036004, at *2 (S.D. Miss. Sept. 12, 2012) (citations omitted).  The employee, however, may be held personally liable.  *See id.*  Only Officer McGinty, in his individual or personal capacity, is potentially liable for the tort of *malicious* prosecution as a result.

Officer McGinty challenges the Plaintiffs' ability to meet the first, second, fourth, and fifth elements of a claim for malicious prosecution.  Any discussion of the third and sixth elements on summary judgment is therefore unnecessary.  *See* Fed. R. Civ. P. 56(c)(1)(B) (requiring a party seeking summary judgment on the basis that a fact cannot be genuinely disputed due to the absence of proof to show "that an adverse party cannot produce admissible evidence to support the fact").

Officer McGinty argues that the Plaintiffs cannot show he instituted any proceedings against them in the absence of a charging affidavit.  This argument overlooks the Police Report [44-1].  Officer McGinty testified in the County Court that he prepared the Police Report and that it "is the charging document."  (Trial Tr. [53-2] 22:22-23:5.)  These circumstances give rise to issues for trial on the first and second elements of the subject claim.

Officer McGinty further contends that the Plaintiffs' prior convictions in the Municipal Court "eviscerate[] any claim of malice or absence of probable cause."  (Defs.' Rebuttal Brief in Supp. of Mot. for SJ [57] at p. 5.)  This argument is based on the following rule of law:  "When a *conviction* is obtained in a lower court prosecution, whether reversed or not, a prima facie case is made that probable cause is present, in the absence of fraud, perjury or other corrupt practices."  *Royal Oil Co. v. Wells*, 500 So. 2d 439, 443 (Miss. 1986) (citations omitted).  Officer McGinty's evisceration argument overlooks the corollary to the preceding rule, that a prima facie case may be rebutted by

the plaintiff's evidence.  *See id.*  In *Royal Oil*, there was no conviction giving rise to a prima facie case, and the issue of probable cause went to the jury.  *See id.*

The Mississippi Court of Appeals examined the rule from *Royal Oil* in a 2012 opinion.  *See Springfield v. Members 1st Cmty. Fed. Credit Union*, 106 So. 3d 826 (Miss. Ct. App. 2012).  In *Springfield*, the court held that the plaintiff's complaint stated a claim for malicious prosecution, and that a prima facie case of probable cause would never exist because the plaintiff was merely indicted and not convicted.  106 So. 3d at 834 (¶ 23).  The court also found the independent intermediary doctrine, which applies in the context of a false arrest claim, inapplicable to malicious prosecution claims.  *See id.* at 833 (¶ 20) (citing *Wheeler v. Cosden Oil & Chem. Co.*, 744 F.2d 1131, 1132 (5th Cir. 1984)).  Extending the independent intermediary doctrine to claims for malicious prosecution would undermine "*Royal Oil*, because if an indictment could break the chain of causation and nullify the claim, the Mississippi Supreme Court would have had no reason to discuss that a conviction only made out a prima facie case for the presence of probable cause in such a claim."  *Id.* at 834 (¶ 21) (citing *Royal Oil*, 500 So. 2d at 443).

Each of the Plaintiffs was convicted "in a lower court prosecution . . . ."  *Royal Oil*, 500 So. 2d at 443.  Further, no evidence "of fraud, perjury or other corrupt practices" regarding the convictions has been brought to the Court's attention.  *Id.*  Thus, a prima facie case of probable cause exists for the Plaintiffs' arrests under the rule from *Royal Oil*.

The Court next considers whether Plaintiffs have offered any evidence to rebut the prima facie case.  For purposes of a malicious prosecution claim, "[p]robable cause requires the concurrence of (1) a subjective element—an honest belief in the guilt of the

-20-

person accused, and (2) an objective element—reasonable grounds for such beliefs."

*Miles v. Paul Moak of Ridgeland, Inc.*, 113 So. 3d 580, 585 (¶ 11) (Miss. Ct. App. 2012)

(quoting *Strong v. Nicholson*, 580 So. 2d 1288, 1294 (Miss. 1991)).  Probable cause

exists if the initiating officer reasonably believed he had a good chance of establishing

the charges to the satisfaction of the judge or jury.  *See id.* (citing *Owens v. Kroger Co.*,

430 So. 2d 843, 846 (Miss. 1983)).

        As discussed in the context of the Plaintiffs' false arrest claims, Plaintiffs have

offered no evidence contradicting Officer McGinty's grounds for arresting either Avon

Rawls or Kelvin Rawls.  Considering the facts before the Court, while putting aside

speculation, conjecture, and the unsupported arguments of Plaintiffs' counsel, there is

no genuine issue for trial as to whether Officer McGinty lacked a reasonable, good faith

belief that Avon Rawls and Kelvin Rawls were guilty of the misdemeanor charges for

which they were arrested.  *Cf. Harrison v. Yalobusha County*, No. 3:09cv106, 2010 WL

3937964, at *14 (N.D. Miss. Oct. 5, 2010) (granting the defendants summary judgment

on malicious prosecution and abuse of process claims that were founded on

speculation).  Summary judgment will be granted in favor of Officer McGinty on the

malicious prosecution claims of Kelvin Rawls and Avon Rawls given these Plaintiffs'

inability to establish the essential element of a want of probable cause.  *See Brown*, 663

F.3d at 766.

        There are facts in dispute regarding Officer McGinty's arrest of Clifton Rollins for

disorderly conduct.  Officer McGinty has testified that Clifton Rollins became "irate" and

"noncompliant" before he was handcuffed at the Bank.  (Trial Tr. [53-2] 16:4-14.)

Furthermore, Rollins initially failed to comply with Officer McGinty's requests for him to

step to the side of a vehicle and to turn around and place his hands on the vehicle.  (*See* Trial Tr. [53-2] 13:8-14:12, 16:4-14, 33:3-34:2.)  Conversely, Jason Rawls has testified by affidavit that Officer McGinty handcuffed Clifton Rollins after Rollins asked, "[W]hat have I done wrong," and complied with Officer McGinty's command to "get up against the truck."  (J. Rawls Aff. [53-3] at pp. 1-2.)  Rawls' affidavit does not describe any repeated commands from Officer McGinty to Rollins.  Overall, Rawls' testimony regarding the arrest of Clifton Rollins could be construed not to describe conduct meeting the crime of disorderly conduct, i.e., Rollins' "fail[ure] or refus[al] to *promptly* comply with or obey a request, command, or order of a law enforcement officer . . . ." Miss. Code Ann. 97-35-7(1) (emphasis added).  "[W]hen the facts and reasonable inferences deduced from those facts are in dispute, the issue [of probable cause] becomes a jury question and it is within their province to determine based upon proper instructions."  *Junior Food Stores, Inc. v. Rice*, 671 So. 2d 67, 74 (Miss. 1996) (citation omitted).  The disputed versions of the arrest of Clifton Rollins create an issue for trial as to whether Rollins can rebut a prima facie case of probable cause.

Malice in the law of malicious prosecution does not refer to evil intent.  *See Hyer v. Caruso*, 102 So. 3d 1232, 1236 (¶ 14) (Miss. Ct. App. 2012) (quoting *Strong*, 580 So. 2d at 1293).  Instead, malice "connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice."  *Id.*  The defendant's subjective state of mind at the initiation of the prosecution is at issue under a malice inquiry.  *Miles*, 113 So. 3d at 586 (¶ 17) (citation omitted).  Thus, it is not surprising that malice is often proven by circumstantial evidence, or that the jury may infer malice from the facts of an action.  *See Lochridge v. Pioneer Health Servs. of Monroe County, Inc.*, 86 So. 3d 942,

947 (¶ 16) (Miss. Ct. App. 2012) (citation omitted).  "The absence of probable cause for

the prosecution is or can be circumstantial evidence of malice."  *Rice*, 671 So. 2d at 74

(citing *C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1100 (Miss. 1992)).

      The fact issues regarding Officer McGinty's grounds for arresting Clifton Rollins

also weigh in favor of the issue of malice being carried to trial.  *See Lochridge*, 86 So. 3d

at 949 (¶¶ 26-27) (reversing a grant of summary judgment in part because genuine

issues for trial as to a lack of probable cause could give rise to an inference that the

plaintiff was prosecuted for an improper purpose).  Furthermore, the affidavit of Jason

Rawls suggests, albeit barely, that Clifton Rollins was arrested for a purpose other than

bringing him to justice for the crimes of disorderly conduct and interfering with a police

officer.  Jason Rawls references a statement by Lieutenant Bullock, Officer McGinty's

supervisor,[7] to the effect that the Plaintiffs' presence in Hattiesburg negatively impacted

taxes and officer pay.  (*See* J. Rawls Aff. [53-3] at p. 2.)  Rawls also describes prior

encounters involving Officer McGinty and Lieutenant Bullock, in which he and his

brothers were accused of being involved with drugs.  (*See* J. Rawls Aff. [53-3] at p. 2.)

Viewing this testimony and the resulting inferences in favor of Rollins, as the Court must

on summary judgment,[8] it is not beyond the realm of reason to conclude that jurors may

draw more than one conclusion as to Officer McGinty's ultimate purpose for the arrest.

*See Rice*, 671 So. 2d at 73 ("[M]alice is a question of fact to be determined by the jury

unless only one conclusion may reasonably be drawn from the evidence.") (citations

---

[7] (*See* Trial Tr. [53-2] 21:9-18.)

[8] *See Sierra Club, Inc.*, 627 F.3d at 138.

omitted); *Hyer*, 102 So. 3d at 1237 (¶ 15) (noting a contentious history between the litigants in finding the malice element satisfied); *Lochridge*, 86 So. 3d at 947 (¶ 17) (holding that the issue of malice should go to the jury where there was evidence that the plaintiff was prosecuted based on a "business decision").  Summary judgment in favor of Officer McGinty on Clifton Rollins' claim for malicious prosecution will be denied due to the existence of fact issues on each of the challenged elements of the claim.

### III.  CONCLUSION

Officer McGinty and the Department are entitled to judgment as a matter of law on all of the Plaintiffs' federal claims.  The Department and Officer McGinty are also entitled to summary judgment on all of the state law claims of Plaintiffs Avon Rawls and Kelvin Rawls.  In addition, Plaintiff Clifton Rollins' state law claims against the Department are subject to dismissal.  Only Clifton Rollins' cause of action for malicious prosecution against Officer McGinty, in his individual capacity, should proceed to trial.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment [44] is granted in part and denied in part.  All of the Plaintiffs Avon Rawls and Kelvin Rawls' federal and state law claims against the Defendants Hattiesburg Police Department and Officer Adam S. McGinty are dismissed with prejudice.  All of the Plaintiff Clifton Rollins' federal and state law claims against the Hattiesburg Police Department are also dismissed with prejudice.  Further, Clifton Rollins' federal claims and state law claims for assault, battery, false imprisonment, libel, slander, and intentional infliction of emotional distress against Officer Adam S. McGinty are dismissed with prejudice.  Only Clifton Rollins' malicious prosecution claim against Officer Adam S. McGinty, in his individual capacity, remains pending for trial.

SO ORDERED AND ADJUDGED this the 14th day of July, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE